**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 09-188 |
| | : | |
| KEITH CANYON | : | CIVIL NO. 14-4465 |
| | : | |

Goldberg, J.                                                                                            October 5, 2015

**<u>MEMORANDUM OPINION</u>**

Before the Court is the <u>pro</u> <u>se</u> motion of Keith Canyon (hereinafter referred to as "Petitioner") to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  In his motion, Petitioner asserts that constitutionally ineffective assistance of counsel during plea negotiations, at sentencing, and on direct appeal entitles him to relief.  For the reasons set out below, I will deny the petition.

**I.       FACTUAL AND PROCEDURAL BACKGROUND**

On March 24, 2009, Petitioner was indicted on one count of armed bank robbery and aiding and abetting in violation of 18 U.S.C. §§ 2113(d) and 2, and one count of using and carrying a firearm during a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924 (c)(1) and 2.  These charges stem from a bank robbery which occurred on March 19, 2008.  On September 3, 2009, the grand jury returned a superseding indictment which charged Petitioner with an additional count of armed bank robbery under Section 2113(d) and using and carrying a firearm under Section 924(c)(1).  These new charges were associated with an earlier bank robbery which occurred on November 27, 2007.  On March 17, 2010, Petitioner's trial counsel was relieved of representation and new counsel was appointed.  On October 19, 2010,

the grand jury returned a second superseding indictment which added obstruction of justice (18 U.S.C. § 1503(a)) and witness tampering (18 U.S.C. § 1512 (b)(3)) charges.   These charges stemmed from letters which Petitioner had sent to a potential witness while he was detained and awaiting trial.

On January 18, 2011, I granted the Government's motion to dismiss the Section 924(c) charge related to the first bank robbery.   On April 7, 2011, Petitioner pleaded guilty to two counts of armed robbery, one count of using and carrying a firearm during the second armed robbery, and one count of obstruction of justice.   Petitioner also entered a nolo contendere plea regarding the witness tampering charge.   At the plea hearing, the prosecutor set forth the following description of events:

> On November 27, 2007, a lone gunman robbed the Fulton Bank located at 210 North 5th Street, Reading, Pennsylvania.   The man wore large sunglasses, a black baseball hat with a red logo and white writing, a black, gray and orange hooded sweatshirt and dark pants.   He brandished what appeared to be a 9 millimeter pistol, cocked the gun and used it to repeatedly threaten the lives of the bank's customers and employees.   The robber produced a white plastic bag which he handed to one of the tellers and demanded money.   The bank teller filled the bag with $3,781 in cash and the robber fled the bank.   The bank video captured these events.
>
> On March 19th, 2008, two men robbed the same Fulton Bank.   The first man wore a hooded sweatshirt and sunglasses and carried what appeared to be a 9 millimeter semi-automatic pistol.   After a short delay, the second robber, bearing a .22 caliber revolver and wearing a gray hooded sweatshirt, came into the Fulton Bank.   The two men approached separate tellers and demanded money.   The first robber pointed his gun at bank employees and even commanded one of the customer service[] representatives to retreat to a side office.   After stealing a total of approximately $5,151 from the tellers, the two robbers fled the bank together.   As in the first robbery, the events were captured by the bank's video surveillance system.
>
> Three of the tellers [that] were present for the [] November 2007 robbery were in the bank at the time of the second robbery.   All three recognize[d] the first robber as the man who robbed the Fulton Bank the previous November.   Within minutes of the second robbery, Reading, Pennsylvania police officer, Matthew Hayfor (ph), spotted a man wearing a gray hooded sweatshirt walking along 4[th] street

2

near the Fulton Bank.  That man, later identified as Ronnie Armstrong, was caught after a short chase.  At the time, Armstrong had $2,310 in his possession. He has admitted participating in the March 19, 2008 robbery and has identified the Defendant, Keith Canyon, as the other robber of the Fulton Bank.

In advance of the robbery, Armstrong showed his .22 caliber handgun to Canyon. Canyon was familiar with the gun and was aware of the fact that it was a real firearm.  Also in advance of the robbery, Canyon carried a cellular telephone that was subscribed to in the name of [the] person identified for the purposes of this proceeding as TL.  Although subscribed to by TL, the phone was generally possessed and used by Canyon and was later described by Canyon as, quote, his telephone.  Immediately before and after the robbery, Canyon communicated with TL by calling her on that cellular telephone.

On or about February 1, 2010, the Defendant sent a letter from the Federal Detention Center [] to TL.  In that letter, Canyon told TL that he would beat his bank robbery case.  He explained that no witnesses could identify him as one of the bank robbers and that the Government would not be able to establish that, quote, that cell phone, close quote, was his.  Canyon then instructed TL not to talk to any Government agents, especially without an attorney present, because the agents were going to try to get her to say that the phone was hers or his.  After instructing TL not to say anything and telling her that the agents work for the Federal Government, Canyon warned TL, quote, if I find out you talked to them and lied to them, you [gonna] regret it, close quote.

At trial, personnel from the Fulton Bank located at North 5th Street, Reading, Pennsylvania would testify that the branch was insured by the FDIC.  The Government would also establish the cellular telephone records that the cellular telephone subscribed to by TL was in the vicinity of the Fulton bank immediately after the March 19, 2008 robbery and that the phone had been used to communicate with Armstrong's telephone approximately 60 times on March 18 through 19, 2008.

(N.T. 04/07/11 at 33-36.)[1]

Sentencing hearings were held on June 6, 2012 and July 3, 2012.  Eric Mercer, a mitigation specialist, and Dr. Kirk Heilbrun, a psychologist who examined Petitioner, testified

---

[1] During the plea colloquy, Petitioner acknowledged that all of these facts as stated by the prosecutor were accurate.  With respect to the witness tampering charge, to which Petitioner pleaded nolo contendere, the prosecutor additionally stated that he "would proffer [that] the Government would establish that TL felt intimidated by the February 1, 2010 communication." While Petitioner did not admit to having committed that offense, he did "acknowledge that if [the case] went to trial, [the Government] could call TL and she would say that she was intimidated, [and] that [the Government] could prove that."  (N.T. 04/07/11 at 36-37.)

for Petitioner.  Francis Acosta, an assistant bank manager who was present for the second robbery, and Ronnie Armstrong, the co-conspirator for the second robbery, testified for the Government.  Under the sentencing guidelines the offense level was 30, and in light of Petitioner's prior convictions, Petitioner's criminal history score was IV.  This translated to an advisory guideline range of 135-168 months which, added to the seven-year mandatory consecutive sentence under Section 924(c), resulted in an advisory guideline range of 219 to 252 months.[2]  I granted Petitioner's motion for a downward variance, and sentenced him to a term of incarceration of 200 months.

Petitioner then appealed to the United States Court of Appeals for the Third Circuit, raising one issue for review. (See discussion infra.)  On July 25, 2013, the Third Circuit dismissed the appeal for lack of jurisdiction.  United States v. Canyon, 532 F. App'x 300 (3d Cir. 2013).  On July 21, 2014, Petitioner filed this § 2255 motion.  The Government has filed a response and this matter is ready for disposition.

## II.    DISCUSSION

Petitioner raises three claims of ineffective assistance of counsel which he argues entitles him to relief under 28 U.S.C. § 2255.  First, he alleges that trial counsel was ineffective for failing to argue that armed bank robbery does not constitute a predicate offense for a sentencing enhancement under Section 924(c).  Second, he contends that trial counsel was ineffective for failing to negotiate a more advantageous plea.  Third, he argues that appellate counsel was ineffective for failing to present the appropriate "sentencing issues" on appeal.

---

[2]  Aside from Petitioner's contention (which I rejected) that a downward adjustment for acceptance of responsibility should apply, neither the Government nor Petitioner objected to these calculations.  (N.T. 07/03/12 at 38.)

4

### A.      Legal Standard of Ineffective Assistance of Counsel

28 U.S.C. § 2255 allows "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence."[3]  28 U.S.C. § 2255(a).  Petitioner claims that his sentence is unconstitutional in that it is the result of the ineffective assistance of counsel.

The Supreme Court's standard for claims of ineffective assistance of counsel in violation of the Sixth Amendment is set forth in Strickland v. Washington, 466 U.S. 668 (1984), and has been reaffirmed consistently since.  According to Strickland, counsel is presumed to have acted effectively unless the petitioner can demonstrate both that (1) "counsel's representation fell below an objective standard of reasonableness" and that (2) there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 686-88, 693-94.  In assessing whether counsel performed deficiently, the court must "'reconstruct the circumstances of counsel's challenged conduct' and 'evaluate the conduct from counsel's perspective at the time.'"  Harrington v. Richter, 131 S.Ct. 770, 779 (2011) (quoting Strickland, 466 U.S. at 689).  Nonetheless, because the "ultimate focus of the inquiry [is] on the fundamental fairness of the proceeding whose result is being challenged . . .  a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  Strickland, 466 U.S. at 696-97. In fact, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

---

[3] A § 2255 motion must be filed within one year from "the date on which the conviction becomes final."  28 U.S.C. § 2255 (f)(1).  The Government does not dispute that Petitioner's motion is timely.

prejudice, which [the Supreme Court] expect[s] will often be so, that course should be followed." Id. at 697.

### B.    Petitioner's Claims

#### 1.    Whether Trial Counsel Was Ineffective for Failing to Argue that Armed Bank Robbery Does Not Constitute a Predicate Offense for a Sentencing Enhancement Under Section 924(c)

Petitioner next contends that his second trial counsel, who represented him at the sentencing hearing, was constitutionally ineffective for failing to "present a colorful argument" that armed bank robbery under 18 U.S.C. § 2113(d) could not be a predicate crime for a Section 924(c) sentencing enhancement. (Motion at 6.)  Section 924(c) provides a mandatory consecutive sentence for the use of a firearm in connection with a "crime of violence," which is defined as a felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924 (c)(3).[4]

According to this definition, armed bank robbery constitutes a crime of violence which is subject to a Section 924(c) sentencing enhancement.  Bank robbery (the underlying crime for armed bank robbery) requires that the Government prove that the defendant, "by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to . . . any bank."  18 U.S.C. § 2113 (a) (excerpting, in relevant part, the first

---

[4] Petitioner received a seven year sentencing enhancement for having "brandished" a firearm.  18 U.S.C. § 924 (c)(3)(ii).

paragraph of the subsection).[5]  Indeed, the Third Circuit has held that bank robbery, "under [] § 2113(a), is a crime of violence."  United States v. Williams, 344 F.3d 365, 370-71 (3d Cir. 2003) (footnote omitted).

In addition to the elements of bank robbery, the statutory definition of armed bank robbery includes an assaultive element, and provides that:

> Whoever, in committing, or in attempting to commit, any offense defined [as bank robbery in] this section, assaults any person, or puts in jeopardy, the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113(d) (emphasis added).  Thus, even if bank robbery were not already a crime of violence under the first paragraph of subsection (a), armed bank robbery under subsection (d) would nevertheless qualify.  See United States v. Manna, 92. F. App'x 880, 887-88 (3d Cir. 2004) (affirming Section 924(c) conviction predicated on 18 U.S.C. § 2113(d) armed bank robbery).   In light of this clear statutory language, appellate counsel's failure to argue that armed bank robbery does not constitute a predicate offense for a sentencing enhancement under Section 924(c) was neither unreasonable nor prejudicial within the meaning of Strickland.

### 2.  Whether Trial Counsel Was Ineffective During Plea Negotiations

Petitioner next contends that his first trial counsel was ineffective for having induced him into entering into a plea bargain that he would not otherwise have agreed to.  Petitioner states that counsel advised him that "based on [his] offense level of 26 and [his] criminal history category of IV he would be able to get a plea for a term of 90 to 115 months [and] that the

---

[5] Armed bank robbery under 18 U.S.C. § 2113(d) can be predicated upon the underlying crime of bank robbery as it is defined in the first or second paragraphs of subsection (a) or (b) of the statute.  While it is not clear from the record under which paragraph(s) the armed bank robbery charge was based, the first paragraph of subsection (a), which makes reference to "force and violence, or [] intimidation," would apply to the facts of this matter.  Here, Petitioner admitted to having used a gun during both armed robberies to demand money and threaten the lives of bank employees.

government would more than likely accept [the] plea."   Petitioner argues that, based on this advice, he agreed to a plea of guilty, and he was prejudiced in that counsel's "failure to negotiate this plea subjected [Petitioner] to a more harsher and more severe penalty as [Petitioner] was sentenced to a term of 200 months."  (Motion at 7.)

It is well-established that the "Sixth Amendment right to counsel [] extends to the plea-bargaining process."   Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing Supreme Court precedent).  Indeed, the "the two-part Strickland [] test applies to challenges to guilty pleas based on ineffective assistance of counsel."  Id. (quotations omitted).  In applying Strickland to this claim, I will accept as true Petitioner's contention that counsel advised him that, if he pled guilty, he would have been sentenced to a term of imprisonment of between 90 to 115 months.  Cherys v. U.S., 405 F. App'x 589, 591 (3d Cir. 2011) (quoting United States v. Dawson, 857 F.2d. 923, 928 (3d Cir. 1988)) (stating that, when determining whether counsel rendered effective assistance without an evidentiary hearing, "a district court must [] consider[] as true all 'nonfrivolous' factual claims").

Petitioner alleges that his first trial counsel's prediction was based on counsel's calculation that his offense level was 26 and his criminal history score was IV.  This results in an advisory guideline range of 92 to 115 months imprisonment, which is substantially similar to counsel's alleged prediction of 90 to 115 months.   Nonetheless, even if this guidelines calculation was one that reasonably competent counsel would have made[6], counsel's forecasted sentence did not account for the Section 924(c) enhancement which is mandated to run consecutive to any sentence imposed.   Accepting Petitioner's allegations as true, counsel's

---

[6] The base offense level for robbery is 20, with upward adjustments based on the use of a firearm and the object of the robbery, among other factors.  USSG § 2B3.1

performance was constitutionally deficient in that his prediction was objectively unreasonable within the meaning of Strickland.

Petitioner fails however to meet the "prejudice" prong of the Strickland standard.  The Third Circuit has "long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted." United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007).  In Shedrick, the plea hearing (which was deemed adequate) included information about the maximum possible sentence and the fact that "[u]ltimately, the appropriate sentence would be left to the exercise of the Court's discretion based upon information presented by both sides and based upon review of the Sentencing Guidelines." Id.; see also United States v. Mustafa, 238 F.3d 485, 492 n.5 (3d Cir. 2001) ("[A]ll that the law requires is that the defendant be informed of his/her exposure in pleading guilty. The law does not require that a defendant be given a reasonably accurate best guess as to what his/her actual sentence will be.").

Here, the guilty plea colloquy conformed to these requirements.  After detailing the maximum sentence for each count of the indictment to which Petitioner was going to plead guilty, I explained to Petitioner that, in the "worst-case scenario . . . the total maximum sentence could be up to a lifetime of imprisonment [and] seven years mandatory minimum term of imprisonment [] to run consecutive to all the sentences on other counts."  I further explained that "I ha[d] no idea what [Petitioner's] sentence [was] going to be," but that I would consider the sentencing guidelines, the nature and circumstances of the offense, his history and characteristics, the seriousness of the offense, and the need to provide him with training and rehabilitation (the Section 3553(a) factors).  I told Petitioner that the Probation Office would prepare a comprehensive pre-sentence report "about [him] and the crimes charged and the facts

9

and circumstances therein," and that both his counsel and the Assistant U.S. Attorney would "have the same opportunity" to object to the findings of that report.  Moreover, Petitioner confirmed that he understood that no one could guarantee what sentence he would receive, and that he would not be entitled to withdraw his plea if he were to receive "a sentence that's more severe than [he] expect[ed]."  (N.T. 04/07/11 at 21-25.)  Since this colloquy fully apprised Petitioner of the consequences of pleading guilty, counsel cannot be deemed ineffective for any erroneous guidelines prediction he may have made.  Shedrick, 493 F.3d at 299; Mustafa, 238 F.3d at 492 n.5.

In its response, the Government addresses a related argument that it believes Petitioner was attempting to make in his motion.  The Government writes that "it assumes that [Petitioner] did not limit himself to an erroneous Guidelines prediction, but [also] claims that [] his attorney predicted that he could negotiate a plea that would result in a sentencing guideline range of 90-115 months."  (Resp. at 15.)  Mindful of Petitioner's pro se status, I will address this claim, and will accept that this allegation is true and that it is not the kind of prediction that competent counsel would have made.

In order to prevail on the "prejudice" prong of Strickland, Petitioner would have to show that:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler v. Cooper, 132 S.Ct. 1376, 1385 (2012).  Petitioner has made no such showing here. Petitioner has not pointed to any evidence to indicate that the Government would have agreed to

a plea deal of 90 to 115 months imprisonment, and that I would have accepted those terms.[7]
Furthermore, even if the Government would have assented to such an arrangement when
Petitioner was being represented by his first trial counsel, the second superseding indictment
(which added the obstruction of justice and witness tampering charges) was issued after first trial
counsel was terminated from the case, and constitutes an "intervening circumstance" which
would likely have resulted in the prosecutor withdrawing the arrangement.  Id.  Accordingly,
Petitioner was not prejudiced by any alleged incompetence on the part of his first trial counsel
during plea negotiations.

### 3.   Whether Counsel Was Ineffective on Appeal

Lastly, Petitioner claims that counsel was ineffective for failing to present the appropriate
"sentencing issues" on appeal.[8]  Petitioner contends that, instead of having argued that this Court
abused its discretion in failing to downwardly depart, appellate counsel should have presented
the claim that his sentence was disparate from that imposed on his co-defendant.[9]  (Motion at 9-
10.)

This claim lacks merit.  As an initial matter, Petitioner mischaracterizes the argument
presented to the Third Circuit.  Although the appeal was dismissed based on the Third Circuit's

---

[7] In its response, the Government addresses another related argument that it believes Petitioner
was attempting to make, which is that first trial counsel "was competent in making his
prediction, but incompetent in achieving the desired result." (Resp. at 14.)  This claim, too, fails
for the same reasons, Petitioner having failed to show that the Government and the Court would
have assented to a plea deal of 90-115 months.

[8] On appeal, Petitioner was represented by his second trial counsel.

[9] In his motion, Petitioner presents this argument as two separate claims.  Ground three alleges
that appellate counsel was ineffective for having presented the downward departure claim as
opposed to the "sentencing issues."  Ground four then identifies, as one of these issues, the
disparate sentence argument.  (Motion at 9-10.)  I will analyze these interrelated arguments
together.

conclusion that "the District Court's denial of the downward departure was the result of its exercise of discretion," appellate counsel did not argue that I abused my discretion in refusing to downwardly depart.  United States v. Canyon, 532 F. App'x 300, 303 (3d Cir. 2013) (citing United States v. Jackson, 467 F.3d 834 (3d Cir. 2006) (finding that court of appeals lack jurisdiction to review discretionary denials of departure motions)).  Appellate counsel argued instead that "the District Court 'erred as a matter of law in effectively concluding that it lacked authority to depart downward.'"  Id. at 302 (quoting Petitioner's brief) (emphasis added).  While this argument was not ultimately successful, it evinces the competence of appellate counsel in that he was aware of the limited circumstance in which a court of appeals can review the denial of a motion for downward departure.  See Jackson, 467 F.3d at 838 ("If the judge believed s/he could not legally depart on the ground asserted, we ha[ve] jurisdiction for legal error; if, instead, the judge recognized her/his authority to depart but chose not to do so, we lack[] jurisdiction to review that decision.").

Further, counsel was not ineffective for failing to present the disparate sentence argument to the Third Circuit.  District court judges are only directed to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6) (emphasis added).  Here, the co-conspirator was sentenced to a term of 75 months imprisonment (Petitioner was sentenced to 200 months).  United States v. Armstrong, Criminal No. 08-246 (doc. no. 54).  While the co-conspirator pleaded guilty to armed bank robbery for the 2008 robbery, he was neither implicated in the 2007 robbery of Fulton Bank nor in the events which gave rise to Petitioner's guilty plea for obstruction of justice and the nolo contendere plea for witness tampering.[10]  (Id. at doc. nos. 21, 54.)  Moreover, and in contrast to

---

[10] The co-conspirator pleaded guilty to armed bank robbery and a Section 924(c) offense for the 2008 robbery of Fulton Bank.  He also pleaded guilty to armed bank robbery for a December 11,

Petitioner, whose conviction for obstruction of justice evidenced a lack of acceptance of responsibility and created a presumption against a downward adjustment, the co-conspirator cooperated with the Government, would have been available to testify at Petitioner's trial, and ultimately testified at Petitioner's sentencing hearing.   (N.T. 07/03/12 at 24-66.)   These significant differences warrant the disparity in the sentences that the two men received.

Additionally, Petitioner has not alleged any procedural defect in the selection of the sentence imposed.   "[A]bsent any significant procedural error," the Third Circuit reviews my sentencing decision under the highly deferential abuse of discretion standard, and "must 'give due deference to the district court's determination that the § 3553(a) factors, on a whole,' justify the sentence." United States v. Tomko, 562 F.3d 558, 567-68 (3d Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).   In light of this, and in consideration of the fact that I granted a 19-month downward variance from the advisory guideline range, it would have been extremely difficult if not virtually impossible to mount a successful challenge to the substantive reasonableness of the sentence imposed.   Thus, appellate counsel's failure to do so was neither unreasonable nor prejudicial within the meaning of Strickland.

### 4.  An Evidentiary Hearing

Petitioner argues that he is entitled to an evidentiary hearing on his motion.   28 U.S.C. § 2255(b) provides that an evidentiary hearing shall be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."   "In the context of an ineffective assistance of counsel claim presented in a § 2255 petition, a district court must therefore determine whether, considering as true all 'nonfrivolous' factual claims, the

2007 robbery of an M & T Bank in Reading.   United States v. Armstrong, Criminal No. 08-246 (doc. nos. 21, 54).   At Petitioner's sentencing hearing, the co-conspirator testified that Petitioner participated with him in the M & T robbery.   See N.T. 07/03/12 at 25-29 (identifying Petitioner as the robber in the M & T Bank surveillance photo and stating that Petitioner was carrying a BB gun and took money from the teller).   Petitioner was not however charged with that crime.

petitioner 'states a colorable claim for relief' under <u>Strickland</u> []---that is, that counsel's performance was deficient and that this deficiency prejudiced the petitioner." <u>Cherys.</u>, 405 F. App'x at 591, (quoting <u>Dawson</u>, 857 F.2d. at 928.  In other words, a "[d]istrict [c]ourt's decision not to hold an evidentiary hearing will be an abuse of discretion unless it can be conclusively shown that [the petitioner] cannot make out a claim for ineffective assistance of counsel." <u>United States v. Lilly</u>, 536 F.3d 190, 195 (3d Cir. 2008).

Petitioner is not entitled to an evidentiary hearing on his motion.  Having considered the parties' submissions, the entire case file, and having disposed of all of Petitioner's ineffectiveness claims on the ground of lack of sufficient prejudice, I have conclusively found that his claims to do not constitute grounds for relief, and an evidentiary hearing is unwarranted.

## III.    CONCLUSION

For the reasons stated herein, Petitioner's § 2255 motion is denied, he is not entitled to an evidentiary hearing, and a certificate of appealability shall not issue.

An appropriate Order follows.